## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| ECONOMY PREFERRED INSURANCE COMPANY and FARMERS PROPERTY AND CASUALTY INSURANCE COMPANY, formerly doing business as METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY, | ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | )    21 C 6072 |
| JOHN E. LAMB and DENA R. LAMB, | ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Defendants John Lamb and Dena Lamb's Motion to Dismiss Plaintiffs Economy Preferred Insurance Company ("Economy") and Farmers Property and Casualty Company's ("Farmers") Complaint or Transfer Venue to Arizona Federal District Court. For the following reasons, Defendants' Motion is denied.

## BACKGROUND

For the purposes of this Motion, the Court accepts as true the following facts from the Complaint. *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013). All reasonable inferences are drawn in Plaintiffs' favor. *League of Women Voters of Chi. v. City of Chi.*, 757 F.3d 722, 724 (7th Cir. 2014).

Economy is incorporated in Illinois with a home office in Rhode Island, where it sells and provides automobile insurance to its clients. Dkt. # 1-1. Farmers maintains its principal place of business in Rhode Island, where it sells and provides property and casualty insurance to its clients. Economy and Farmers (formerly MetLife) offer a bundled product, referred to as "MetLife Auto and Home GrandProtect®" (the Policy Package"). *Id.* ¶¶ 3, 6. The Policy Package includes auto, home, and personal excess liability policies. *Id.* ¶ 5.

On or around September 18, 2016, Defendants obtained a Policy Package through their insurance agent, Harke Insurance Agency, LLC ("Harke"), located in Downers Grove, Illinois. *Id.* ¶¶ 3–4. The Policy Package was continually renewed with the latest renewals commencing on September 18, 2020 and expiring on September 18, 2021. *Id.* ¶ 6.

On or about September 18, 2020, Economy renewed the Lambs' automobile insurance policy under the Package Policy for a period commencing on September 18, 2020 and expiring on September 18, 2021 (the "Auto Policy"). *Id.* ¶ 7. The Auto Policy was issued to the Lambs at 20651 N. Elizabeth Avenue, Prairie View, Illinois (the "Illinois property") and covered a 2003 BMW, which at the time was principally garaged in Lake County, Illinois.[1] *Id.* ¶¶ 7, 11.  The Auto Policy provided uninsured

---

[1] The declarations page of the Auto Policy lists the 2003 BMW as located in Territory 04.  Dkt. # 12-2, Ex. B.

2

motorist and underinsured motorist coverage by an Illinois Endorsement, AE40IL 0115. *Id.*, Ex. A. The Auto Policy remained in effect until it was cancelled by the Lambs on or about March 24, 2021. *Id.*

A homeowners policy was also issued by Farmers on September 18, 2020, insuring Defendants' Illinois property (the "Homeowners Policy"). *Id.* ¶ 8. The Homeowners Policy remained in force until cancelled by the Lambs on or about March 5, 2021. *Id.* Additionally, the Policy Package included a personal excess liability policy (the "PELP Policy") that included the Auto Policy, the Homeowners Policy, and a renter's policy covering a rental property located in Sun City West, Arizona (the "Arizona rental property"). *Id.*, Ex. B. The policies were executed by Plaintiffs in Rhode Island. Dkt. # 1-1, Ex. A; Dkt. # 6-7.

Upon information and belief, Plaintiffs allege the 2003 BMW covered by the Auto Policy was registered in Illinois during the policy period through the date of cancellation. *Id.* The premiums for the coverage under the Package Policy were rated based upon Defendants' Illinois residence and the vehicle being principally garaged in Illinois. *Id.* ¶ 13. At no time during the Auto Policy period did Defendants inform Economy the 2003 BMW was no longer principally garaged in Illinois. *Id.* ¶ 12.

In November 2020, John was involved in a motor vehicle accident in Maricopa County, Arizona. *Id.* ¶ 14. John was operating a 1993 Harley Davidson motorcycle (not the vehicle insured under the Auto Policy) when he collided with an underinsured

motorist. *Id.* ¶ 15. As a result, John claimed to have sustained personal injuries and Dena claimed to have suffered loss of consortium. *Id.* ¶ 17. Defendants made a claim for the policy limits under their Auto and PELP policies. *Id.* ¶ 20. Economy and Farmers denied the claim and filed a declaratory judgment action in the Circuit Court of the Nineteenth Judicial Circuit, Lake County, Illinois.

Defendants removed the case to federal court and now move to dismiss the action for lack of personal jurisdiction and improper venue under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3). Alternatively, Defendants move to transfer venue to the United States District Court for the District of Arizona under 28 U.S.C. § 1404(a).

In support of their Motion, Defendants attach declarations from both John and Dena and other supporting documentation. The declarations provide that, in May 2019, Dena permanently moved to Arizona into the Arizona rental property. Dkt. # 6-2, ¶ 9. She changed her domicile from Illinois to Arizona and obtained an Arizona License. *Id.* ¶¶ 9, 11. In June 2019, Dena notified their Harke agent that she and John intended to permanently move to Arizona by early 2020. *Id.* ¶ 13. John began residing with Dena in Arizona as of November 2019. Dkt. # 6-5, ¶ 11. John intended to briefly return to Illinois in March 2020 but was precluded from doing so due to COVID-19. *Id*. ¶¶ 12–13. In July 2020, Defendants notified their Harke agent they were finalizing John's move to Arizona and intended to sell the Illinois property. *Id.* ¶ 14. John also purportedly informed the Harke agent that the insured 2003 BMW would be

4

permanently moved to Arizona by the end of August 2020. *Id.* ¶ 15. On August 26, 2020, the insured vehicle was shipped to Arizona. *Id.* ¶ 19. Defendants assert that, as early as October 2019 and as late as August 2020, John also changed his domicile from Illinois to Arizona. In September 2020, Defendants renewed their Policy Package with Plaintiffs, which listed the addresses of the Illinois and Arizona properties.

Defendants move to dismiss Plaintiffs' Complaint for lack of personal jurisdiction and improper venue or, alternatively, to transfer this matter to the United States District Court for the District of Arizona

## LEGAL STANDARD

### I.    Motion to Dismiss for Lack of Personal Jurisdiction

A motion to dismiss under Rule 12(b)(2) challenges the court's ability to exercise personal jurisdiction over a defendant. *Liqui-Box Corp. v. Scholle IPN Corp.*, 2020 WL 5593755, at *3 (N.D. Ill. 2020). A "plaintiff need not include facts alleging personal jurisdiction in the complaint, but once the defendant moves to dismiss the complaint . . . for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Curry v. Revolution Lab'ys., LLC*, 949 F.3d 385, 392 (7th Cir. 2020) (quoting *Purdue Rsch. Found. v. Sanofi-Synthelabo*, *S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)).

When a court rules on a Rule 12(b)(2) motion to dismiss without holding an evidentiary hearing, the plaintiff need only make a *prima facie* case for personal

jurisdiction. *Id.* at 393 (citing *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 424 (7th Cir. 2010)). If the parties submit affidavits, the court "may weigh the affidavits," but the "plaintiff is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record." *Id.* (quotations omitted).

## II.     Motion to Dismiss for Improper Venue

On a motion to dismiss for improper venue under Rule 12(b)(3), the plaintiff bears the burden of establishing that the venue it chose is proper. *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 18 (1972). In resolving the issue, the court must take all allegations in the complaint as true, and although the court may examine facts outside the complaint, the court must resolve all factual conflicts and draw all reasonable inferences in the plaintiff's favor. *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987).

## III.    Motion to Transfer Venue

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). To determine whether transfer will serve the convenience of the parties and witnesses, and promote the interests of justice, the court must examine both the private and the public interests at stake. *Nalco Co. v. Env't. Mgmt. Inc.*, 694 F. Supp. 2d 994, 998 (N.D. Ill. 2010). The private interests include: (1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the

6

witnesses; and (5) the convenience to the parties of litigating in the respective forums. *Sassy, Inc., v. Berry*, 406 F. Supp. 2d 874, 876 (N.D. Ill. 2005). The "interest of justice" factors include: (1) the congestions of the respective court dockets; (2) prospects for a speedy trial; and (3) the courts' familiarity with the applicable law. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 221 (7th Cir. 1986).

Section 1404(a) does not indicate the relative weight to be accorded to each factor. Instead, the district court has discretion to "adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org.*, *Inc., v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). In deciding a motion to transfer, the court may consider affidavits from the parties, in addition to the complaint's allegations. *See, e.g.*, *Simonian v. Monster Cable Prods. Inc.*, 821 F. Supp. 2d 996, 998 (N.D. Ill. 2010).

## DISCUSSION

Defendants move to dismiss Plaintiffs' Complaint for lack of personal jurisdiction and improper venue or, alternatively, to transfer this matter to the United States District Court for the District of Arizona. With the above standards in mind, we address each Motion in turn.

### I.     Motion to Dismiss for Lack of Personal Jurisdiction

Illinois' long-arm statute provides that the Due Process Clause of the Fourteenth Amendment sets the outer boundary of the personal jurisdiction of its courts. *See* 735

ILCS 5/2–209(c) ("A court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States."). The Due Process Clause authorizes personal jurisdiction over out-of-state defendants who have "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). A defendant's contacts with the forum state must be such that it could "reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980)).

"Jurisdiction over a defendant can be established either through general or specific jurisdiction." *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017). Here, Plaintiffs argue for specific jurisdiction. A court may exercise specific personal jurisdiction over a defendant based on the defendant's contacts with the forum state. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). The Seventh Circuit identified "three essential requirements" for specific jurisdiction: "(1) the defendant must have purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state; (2) the alleged injury must have arisen from the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and

substantial justice." *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012) (internal citations omitted).

The key is that the "defendant's *suit-related* conduct must create a substantial connection with the forum State." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014) (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)) (emphasis in original). Importantly, the relationship between the defendant and the forum "must arise out of contacts that the defendant *himself* creates with the forum." *Id.* (quoting *Walden*, 571 U.S. at 284) (cleaned up). "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party or a third person." *Rudzewicz*, 471 U.S. at 475 (cleaned up).

Defendants argue there is no specific personal jurisdiction because they lack the requisite minimum contacts. To support this contention, Defendants assert their only contact with Illinois is the location of Economy's authorized agent, Harke, through which they procured the various policies. Thus, Defendants claim they "never directed their activities towards Plaintiffs," and their insurance contract alone does not show they directed their activities towards Illinois. They also assert that despite Economy's incorporation in Illinois, Farmers is a Rhode Island corporation and therefore, cannot satisfy specific personal jurisdiction. Plaintiffs argue there is specific jurisdiction

9

because Defendants' activity in procuring the Policy Package constitutes the transaction of business within Illinois as well as a contract to insure property and a risk in Illinois.

It is true that an individual's contract with an out-of-state party *alone* cannot automatically establish sufficient minimum contacts. *Rudzewicz*, 471 U.S. at 478. Even so, the Court finds Plaintiffs have made a prima facie case for specific jurisdiction. Defendants intentionally used an Illinois insurance agent to procure the Policy Package, the Auto Policy has Illinois endorsements, the Homeowners Policy (which is included in the Policy Package) insures an Illinois residence, and the Declarations page of the Auto Policy lists the vehicle as located in "Territory 04." *See Eastern Concrete Materials, Inc. v. ACE Am. Ins. Co.*, 948 F.3d 289, 298 (5th Cir. 2020) (in Texas action by insurance company seeking declaratory judgment regarding its duty to defend or indemnify the defendant, a New Jersey corporation, for incident at New Jersey rock quarry, the defendant was subject to specific jurisdiction where the defendant engaged, or authorized its Texas-based parent company to engage, Texas insurance broker to purchase policy in Texas). Defendants here could have "reasonably anticipate[d] being haled into court" in Illinois to litigate coverage under the policies included in the Policy Package. *See World-Wide Volkswagen*, 444 U.S. at 297.

Defendants argue that even if there is a showing of requisite minimum contacts, the Court cannot exercise personal jurisdiction over them because it would offend traditional notions of fair play and substantial justice. *See Tamburo v. Dworkin*, 601

10

F.3d 693, 700, 702 (7th Cir. 2010). Defendants are Arizona residents who no longer have any ties to Illinois. Furthermore, John is still undergoing treatment for his injuries in Arizona, and it would be difficult and extremely painful for him to travel to Illinois for litigation demands. There is no doubt Defendants would be severely burdened and suffer greater expense if their frequent presence in Illinois is required by this litigation. But today's technology, the increased use of remote proceedings, and the nature of this declaratory action greatly reduce the burden on Defendants. Indeed, is unlikely Defendants' physical presence in Illinois would be required at any point during this litigation. This Court's exercise of specific personal jurisdiction over Defendants does comport with the traditional notions of fair play and substantial justice. Therefore, Defendants' motion to dismiss for lack of personal jurisdiction is denied.

## II.     Motion to Dismiss for Improper Venue

Defendants next argue the case should be dismissed for improper venue under Rule 12(b)(3). Defendants argue this District is not the proper venue for this matter because it centers on an Arizona resident's request for coverage for an accident that occurred in Arizona. Plaintiffs argue venue is proper considering the suit involves the construction of an insurance policy that concerned an Illinois property and that was issued and delivered in Illinois.

Under 28 U.S.C. § 1391(b)(2), venue is proper in a district "in which a substantial part of the events or omissions giving rise to the claim occurred, or a

substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2); *see also, e.g.*, *Brunswick Corp. v. Thorsell*, 2014 WL 1612668, at *2 (N.D. Ill. 2014) (explaining Section 1391(b)(2) to require more than "some tangential connection" to the chosen venue). "For events to be considered 'substantial' under the statute, it is sufficient for the plaintiff to establish that the events occurring in the forum district were part of the historical predicate for the instant suit." *Jackson v. N'Genuity Enters., Co.*, 2014 WL 4269448, at *6 (N.D. Ill. 2014) (cleaned up).

"There is legal support for the proposition that, in a declaratory action such as this one, venue may lie where the events occurred in the underlying lawsuit for which coverage is sought; and also that venue may lie where the events relating to the insurance policy at issue occurred." *Lumbermens Mut. Cas. Ins. Co. v. Peirce, Raimond, & Coulter, P.C.*, 2009 WL 1035022, at *1 (W.D. Pa. 2009). "[Section] 1391(b)(2) does not require the court to determine the best venue for an action, but merely whether a substantial part of the events or omissions giving rise to the claim occurred in the judicial district in which the action was brought." *Imperial Crane Servs., Inc. v. Cloverdale Equip. Co.*, 2013 WL 5904527, at *4 (N.D. Ill. 2013) (cleaned up). Thus, "[i]f the selected district's contacts are 'substantial,' it should make no difference that another's are more so, or the most so." *Caldera Pharm., Inc. v. Los Alamos Nat. Sec., LLC*, 844 F. Supp. 2d 926, 929 (N.D. Ill. 2012) (citation omitted).

12

Based on the record before the Court, venue is appropriate both in this District and in Arizona. Thus, Defendants' motion to dismiss for improper venue is denied.

## III. Motion to Transfer Venue

Defendants alternatively move to transfer venue to the United States District Court for the District of Arizona pursuant to 28 U.S.C. § 1404(a). We consider the private and public interest factors in turn.

### a. Private Interests Factors

In evaluating the relevant private interests, the Court weighs "(1) plaintiff's choice of forum, (2) the situs of the material events, (3) the relative ease and access to sources of proof, (4) the convenience of the parties and (5) the convenience of the witnesses." *Cent. States, Se. & Sw. Areas Pension Fund v. Mills Invs., LLC*, 2011 WL 4901322, at *2 (N.D. Ill. 2011). We address each factor in turn.

### 1. Plaintiffs' Choice of Forum

The first factor—Plaintiffs' choice of forum—weighs slightly against transfer. A plaintiff's choice of forum is generally given substantial weight, particularly when it is the plaintiff's home forum. *Vandeveld v. Christoph*, 877 F. Supp. 1160, 1167 (N.D. Ill. 1995). "In the case of a declaratory judgment action, however, that principle has less force." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 718 (7th Cir. 2002). A plaintiff entity is deemed to reside where it maintains its principal place of business. 28 U.S.C. § 1391(c)(2). Additionally, a plaintiff's choice of forum may be afforded less deference

13

when another forum has a stronger relationship to the dispute or when the forum of the plaintiff's choice has no significant connection to the situs of material events. *Gueorguiev v. Max Rave*, LLC, 526 F. Supp. 2d 853, 857 (N.D. Ill. 2007).

While Economy is incorporated in Illinois, its administrative offices are in Rhode Island, and Farmer's is a Rhode Island corporation. The policies were executed by Plaintiffs in Rhode Island. And while the policies were procured by an Illinois insurance agent, Defendants are residents of Arizona and the accident for which they seek coverage for took place in Arizona. Plaintiffs' choice of forum is entitled to little deference here.

### 2. Situs of Material Events

The second factor—the situs of material events—is trickier, but nevertheless weighs against transfer. Defendants argue the accident, claim for coverage, and location of the insured risk at the time of the accident all point to Arizona. Plaintiffs, on the other hand, claim all of the activities associated with the policies took place in Lake County, Illinois.

In cases where an insurance company seeks a declaratory judgment asserting it has no duty to defend a policy holder, courts often consider the situs to be "the forum where the insurance policy has been solicited, negotiated, delivered, and executed." *See, e.g.*, *Hartford Cas. Ins. Co. v. Topsail Sportswear, Inc.*, 2010 WL 2757556, at *2 (N.D. Ill. 2010) (collecting cases). Other courts have held that the situs is the location where

14

the decision to deny coverage was made. *See Evangelical Lutheran Church In Am. v. Atl. Mut. Ins. Co.*, 973 F. Supp. 820, 823 (N.D. Ill. 1997) (concluding site of events in declaratory judgment action regarding insurance coverage is where the decision to deny coverage occurred); *Com. Union Ins. Co. v. Auto Europe, L.L.C.*, 2002 WL 47026, at *2 (N.D. Ill. 2002) (same). Here, the policies were solicited, negotiated, and delivered in Illinois via Defendants' Harke agent. The policies were executed by Plaintiffs in Rhode Island. The decision to deny coverage presumably took place at Plaintiffs' offices in Rhode Island or in Illinois, although the record is not clear in this respect.

Although the injury took place in Arizona, the insurance coverage Defendants sought arose from their Policy Package procured in Illinois, through Illinois authorized insurance agents. The fact that the injury itself occurred in Arizona does not compel the parties to try the case there. Thus, Defendants' argument is unpersuasive.

### 3. Relative Ease and Access to Sources of Proof

The third factor—the location of material sources of proof—is neutral. Although neither party addresses this factor, this declaratory judgment action is unlikely to go to trial. To decide this matter, it is likely that the Court will need little more than the policies at issue. Any documentary evidence that may be needed should be easily accessible from either location.

### 4. Convenience of the Parties

The fourth factor—the relative convenience for the parties—weighs slightly in favor of transfer. This factor considers "the parties' residences and their ability to bear the expense of litigating in each forum." *McCain Foods Ltd. v. J.R. Simplot Co.*, 2017 WL 3432669, at *4 (N.D. Ill. 2017). Again, Plaintiffs' principal places of business are in Rhode Island. Plaintiffs are national insurance companies and there is no evidence that litigating in Arizona would be more burdensome than litigating in Illinois. On the other hand, Defendants are Arizona residents who no longer have any ties to Illinois. Furthermore, John is still undergoing treatment for his injuries, and it would be difficult and extremely painful for him to travel to Illinois for litigation demands. There is no doubt Defendants would be severely burdened and suffer greater expense if their frequent presence in Illinois is required by this litigation. However, as noted above, the burden on and expense to Defendants is significantly reduced thanks to today's technology, as well as the nature of the case.

### 5. Convenience of Witnesses

The fifth factor—the convenience for non-party witnesses—is "often viewed as the most important factor in the transfer balance." *Post Media Sys.*, 2020 WL 833089, at *3 (quoting *Brandon Apparel Grp. v. Quitman Mfg. Co.*, 42 F. Supp. 2d 821, 834 (N.D. Ill. 1999)). This factor is relatively neutral. As Plaintiffs argue, the questions presented by this case involve issues of law, and therefore witnesses are not a concern.

16

Indeed, "declaratory actions involving a duty to defend generally involve only questions of law and are frequently resolved by summary judgment and not trial." *Great W. Cas. Co. v. Ross Wilson Trucking*, 2017 WL 707484, at *6 (C.D. Ill. 2017).

In sum, the private interest factors do not weigh in favor of transfer.

### b. Public Interest Factors

The interests of justice component relates to the efficient administration of the court system. *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc*., 626 F.3d 973, 978 (7th Cir. 2010). In evaluating the interests of justice, the Court considers (1) docket congestion and likelihood to proceed to a speedy trial, (2) each court's relative familiarity with the relevant law, (3) the respective desirability of resolving controversies in each locale, and (4) the relationship of each community to the controversy. *Id.*

### 1. Docket Congestion and Speed to Trial

The first factor—docket congestion—is neutral. As of December 31, 2021, the number of cases per judge in the Northern District was 561, and 479 in Arizona.[2] The median number of months from filing to trial in the Northern District was 53.1, and 34 in Arizona. These statistics lead to the conclusion there is no significant difference in the timing of resolving the issue before the Northern District of Illinois, as opposed to the Arizona District Court.

---

[2] https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile1231.2021.pdf

### 2. Familiarity with Applicable Law

The second factor—the familiarity with applicable law—disfavors transfer. Without engaging in any meaningful choice of law analysis, the parties dispute whether Illinois law or Arizona law will govern in this matter, as the policies do not contain a choice of law provision. Generally, when a transfer has taken place under Section 1404(a), "the state law applicable in the original court also appl[ies] in the transferee court." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 134 S. Ct. 568, 582 (2013). This means, regardless of whether the case is transferred, Illinois choice of law principles will apply. In this sense, an Illinois court would be more familiar with the applicable law, especially if it results in the application of Illinois law to this dispute. But, if it is ultimately determined that Arizona law should apply, then the Arizona court would be better suited to resolve this matter.

In cases involving insurance contracts, Illinois courts apply a "most significant contacts" test to determine which state's law should govern. *See Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 873 (7th Cir. 2000). Under this test, "insurance policy provisions are generally governed by the location of the subject matter, the place of delivery of the contract, the domicile of the insured or of the insurer, the place of the last act to give rise to a valid contract, the place of performance, or other place bearing a rational relationship to the general contract." *Jupiter Aluminum*, 225 F.3d at 873 (citing *Lapham–Hickey Steel Corp. v. Protection Mut. Ins. Co.*, 166 Ill. 2d 520 (1995)).

18

The location of the insured risk will generally be given greater weight than any other single factor in determining which state's substantive law will apply, provided that the risk can be located, at least principally, in a single state. Restatement (Second) of Conflict of Laws § 193, cmt. b (1971); *Diamond State Ins. Co. v. Chester-Jensen Co.*, 243 Ill. App. 3d 471, 488 (1st Dist. 1993). More specifically, in a case where the trial court is performing a choice-of-law analysis as to the terms of an automobile insurance policy, the state where the parties intended the vehicle in question to be principally located (the location of the insured risk) will govern, unless some other state has a more significant relationship to the transaction, even if the vehicle is occasionally located somewhere else. *See* Restatement (Second) of Conflict of Laws § 193, cmt. b (1971); *Costello v. Liberty Mut. Fire Ins. Co.*, 376 Ill. App. 3d 235, 242 (1st Dist. 2007).

Based on the record currently before the Court, it is likely that Illinois law will apply. *See Allen v. State Farm Mut. Auto. Ins. Co.*, 214 Ill. App. 3d 729, 735–37 (1st Dist. 1991) (holding that Indiana law controlled because the automobile insured by the policy was principally garaged in Indiana, even though it occasionally was driven in different states); *Country Preferred Ins. Co. v. Chastain*, 2012 IL App (3d) 110702-U, ¶ 16 (even though the accident and arbitration with the other driver occurred in Delaware, Illinois had more significant contacts to the policy because the defendant was an Illinois resident when he entered into the contract in Illinois and the insured vehicle

19

was licensed, registered, and garaged in Illinois); *Shelton v. Allstate Northbrook Ins. Co.*, 2018 IL App (2d) 170548-U, ¶¶ 23–24. This factor does not favor transfer.

### 3. The Respective Desirability of Resolving Controversies in Each Locale and the Relationship of Each Community to the Controversy

In assessing the desirability of litigating the case in each locale, the interest of each locale in the suit is to be considered. The coverage dispute is between Economy, an Illinois company with its administrative offices in Rhode Island, Farmers, a Rhode Island corporation, and Defendants, who are Arizona residents. While the policies were executed by Plaintiffs in Rhode Island, they were negotiated, procured, and delivered in Illinois with Illinois endorsements. And, although the insured vehicle was located in Arizona at the time of the accident, Plaintiffs deny knowledge of the vehicle's change in location, and the Auto Policy reflects that the insured vehicle was located in "Territory 04."

Defendants argue that Arizona is the community with the greatest ties to the action because the activities, practices, and evidence at issue are entirely located in Arizona. As previously discussed, the Court recognizes that Arizona aggregates a portion of the relevant events because John's injury took place in Arizona. However, Illinois has a strong interest in the resolution of a dispute involving an Illinois insurance contract for Illinois risks. The third and fourth factors do not favor transfer.

Again, "[t]he burden is on the moving party to demonstrate that the balance of the factors weighs heavily in favor of transfer and that transfer would not merely shift inconvenience from one party to another." *Graham v. UPS*, 519 F. Supp. 2d 801, 809 (N.D. Ill. 2007). Considering the totality of the public and private interests, this Court concludes that Defendants have not met their burden of establishing that transfer is warranted under the circumstances. Therefore, Defendants' Motion to Transfer is denied.

## **CONCLUSION**

Based on the foregoing analysis, Defendants' Motion to Dismiss or Transfer [5] is denied. Status is set for 6/2/2022 at 10:50 a.m. It is so ordered.

Dated: May 17, 2022

_____
Charles P. Kocoras
United States District Judge